IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

ESSEX INSURANCE COMPANY,

                Plaintiff,

v.                                      CIVIL ACTION NO.   3:15-15881

SCHOONER'S BAR & GRILL, INC.,
dba SCHOONER'S WATERFRONT GRILLE,
HUNTINGTON HARBOR MARINA, LLC, and
JASON TOLLIVER,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff Essex Insurance Company's Motion for Summary Judgment (ECF No. 100) on Count One and the Defendants' Counterclaim.   Defendant filed a Response that included a Cross-Motion for Partial Summary Judgment (ECF No. 122) on the insurable interest issue in Count One.   For the following reasons, the Court **GRANTS in part and DENIES in part** Plaintiff's Motion (ECF No. 100) and **DENIES** Defendant's Cross-Motion (ECF No. 122) on the same issue.

I.       **Background**

This case involves the applicability of a marine insurance policy to the sinking of a permanently moored steel deck barge called *SCHOONER'S* (hereinafter "the Barge").   Plaintiff filed the complaint on December 4, 2015, seeking a declaratory judgment from the Court on three alternative theories: Count 1 alleged that the named insured, Defendant Schooner's Bar & Grill, Inc. (Schooner's, Inc.), did not have an insurable interest at the time of loss; Counts 2, 3, and 4

alleged that the policy's coverage excluded the cause of the Barge's sinking; and Count 5 alleged that the policy was void due to a breach of duty of cooperation. *Pl.'s Compl.*, ECF No. 1. The instant motion covers only Count 1 on insurable interest and Defendants' Counterclaim for bad faith.

Defendants are all related, but separate, entities. Defendant Jason Tolliver (Tolliver) is the sole shareholder of both Schooner's, Inc. and Defendant Huntington Harbor Marina, LLC (Adam's Landing[1]). *Pl.'s Compl.*, ECF No. 1, at ¶ 11; *Examination Under Oath of Jason Tolliver* (*Exam. Under Oath*), ECF No. 100-3, at 42:24-43:1-3. Schooner's, Inc. and Adam's Landing do not have a formal relationship besides sharing a common owner. *Exam. Under Oath*, ECF No. 100-3, at 19:1-11. Adam's Landing purchased the Barge in 2009. *Id.* at 60:14-16. Schooner's, Inc. was formed by Tolliver in October of 2009 to operate the restaurant on the Barge. *Id.* at 47:11-14. Schooner's, Inc. applied for and was approved by Plaintiff for an insurance policy that covered the Barge and its contents in 2012.[2] *Commercial Ins. Application*, ECF No. 122-6; *Ins. Policy*, ECF No. 122-7.

The parties do not contest that during the 2012 season Schooner's, Inc. operated the restaurant on the Barge and employed bartenders, cooks, and waitresses for the business. *Exam. Under Oath*, ECF No. 100-3, at 107:5-8, 142:15-20. Tolliver also provided evidence that

---

[1] Huntington Harbor Marina, LLC was originally formed as Adam's Landing Marina, LLC. *Pl.'s Compl.*, ECF No. 1, at ¶ 10. For clarification, the Court will refer to the corporate entity as Adam's Landing throughout this opinion.

[2] In its response, Schooner's, Inc. explains the relationship between Broker Lynn Dorton and Agent Bob Becker and how Broker Dorton recommended that Schooner's, Inc. be the listed insured in the policy. *Def.'s Resp.*, ECF No. 122, at 3. These facts are presented to show that Plaintiff knew from the beginning that Schooner's, Inc. was only the operating entity rather than the owner. The Court finds the information irrelevant in determining whether Schooner's, Inc. had an insurable interest at the time of loss because neither party argues that Schooner's, Inc.'s insurable interest was lacking at the time the policy was acquired.

Schooner's, Inc. owned the equipment used in the restaurant.   *See Aff. of Jason Tolliver*, ECF No. 122-2, at 2; *Am. 2013 & 2014 Tax Return*, ECF No. 122-9 (claiming depreciation of equipment). The restaurant was leased out to Bar Boat, LLC during the 2013 season.   *Bar Boat LLC Lease*, ECF No. 122-11.   The lease specifies Tolliver as the landlord and Bar Boat, LLC as the tenant. *Id.*   Tolliver signed another lease the following two years with Paul Runnels, who operated Sink or Swim LLC, to run the restaurant.   *Sink or Swim LLC Lease 2014*, ECF No. 122-12; *Sink or Swim LLC Lease 2015*, ECF No. 122-13.   Schooner's, Inc. is not listed on either of these leases. The leases, however, do contain provisions in which the tenant can use the equipment already installed on the Barge.   *See Bar Boat Lease*, ECF No. 122-11; *Sink or Swim LLC Lease 2014*, ECF No. 122-12; *Sink or Swim LLC Lease 2015*, ECF No. 122-13.

On February 23, 2015, Tolliver received a call from a co-worker at Early Construction Company (not a party to this suit) who noticed that the Barge was taking on water.   *Exam. Under Oath*, ECF No. 100-3, at 141:18-21, 143:15-16.   Although Tolliver attempted to pump out the excess water, the Barge sank at its moorings.   *Id.* at 152:4-7, 153:14-15.   Not long thereafter, Tolliver filed a claim with Plaintiff for recover, which prompted this declaratory judgment action.

## II.    Legal Standard

To obtain summary judgment, the moving party must show that no genuine issue as to any material fact remains and that the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a).   In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]"   *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).   Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party.   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).   Any inference, however, "must fall within the range of

reasonable probability and not be so tenuous as to amount to speculation or conjecture." *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001) (citation omitted).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. "Mere speculation by the non-movant cannot create a genuine issue of material fact" to avoid summary judgment. *JKC Holding*, 264 F.3d at 465.

### III.   Discussion

Count 1 of Plaintiff's Complaint alleges that the insurance policy is void because Schooner's, Inc. did not have an insurable interest over the Barge at the time of the loss. *Pl.'s Compl.*, ECF No. 1. Plaintiff does not appear to challenge Schooner's, Inc.'s insurable interest at the time of the initial coverage. Rather, Plaintiff argues that Schooner's, Inc.'s interest ended when it stopped operating the restaurant. *Pl.'s Mem. in Supp.*, ECF No. 102, at 15. After the 2012 season, Plaintiff asserts that Schooner's, Inc. did not have a bank account, employees, listed revenue, or assets as related to the Barge. *Id.* The restaurant operations were taken over in subsequent seasons by Bar Boat LLC and Sink or Swim LLC. *Id.* As these leases list Tolliver individually as the landlord, Plaintiff argues that Schooner's, Inc. ceased to have any operating interest in the Barge and thus cannot establish an insurable interest at the time of loss in 2015. *Id.*

Plaintiff also argues that the insurance policy only insures Schooner's, Inc., making Tolliver individually and Adam's Landing ineligible to collect on any insurance proceeds.  *Id.* at 17.

Schooner's, Inc., on the other hand, argues that the leases—although signed by Tolliver individually—were actually authorized by Schooner's, Inc. and that Tolliver served merely as its corporate representative.  *Def.'s Resp.*, ECF No. 122, at 14.  Schooner's, Inc. points to its equipment that remained on the Barge and the provisions in the leases for the equipment's continued use in the restaurant.  *Id.*  Each of the leases also negotiated for continued use of the name of the restaurant, Schooner's Bar & Grill, an agreement that only Schooner's, Inc. would have the authority to enter.  *Id.* at 15.  Thus, Schooner's, Inc. argues that the Court should grant summary judgment in its favor, declaring that Schooner's, Inc. had an insurable interest at the time of loss.

### a.  Insurable Interest

In West Virginia, an insurance policy in property is enforceable only if the insured has "an insurable interest in the things insured."  W. Va. Code § 33-6-3(a).  An insurable interest is further defined as meaning "any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment."  W. Va. Code § 33-6-3(b).  To measure an insurable interest in the subject property, the court looks to "the extent to which the insured might be damnified by loss, injury, or impairment thereof."  W. Va. Code § 33-6-3(c).  An insurance policy covering an insured who does not have an insurable interest in the property is void.  *See Fire Ass'n of Philadelphia v. Ward*, 42 S.E.2d 713, 715-16 (W. Va. 1947) ("It is a rule of insurance law generally that the person taking out the policy must have an insurable interest in the subject matter of the insurance; and if such interest is lacking the policy is void.").  Having an insurable interest does not mean that the

insured must own the property.[3]   Rather, the insured must prove that there is at least a "substantial economic interest" in the property to recover on an insurance policy.   The insured also has the burden to prove that the property comes under the insurance policy's coverage.   *Camden-Clark Mem'l Hosp. Ass'n v. St. Paul Fire & Marine Ins. Co.*, 682 S.E.2d 566, 574 (W. Va. 2009).

Here, it is evident that Schooner's, Inc. did not own the Barge at any point in time.   *See Aff. of Jason Tolliver*, ECF No. 122-2.   The argument, thus, boils down to one simple question: did Schooner's, Inc. have a substantial economic interest in the Barge at the time of the Barge's sinking in February of 2015?   The Court finds that this question presents at least a question of fact properly left for the jury.   As Schooner's, Inc.'s evidence contradicts evidence presented by Plaintiff, and Schooner's, Inc.'s evidence is further challenged on credibility, it would be inappropriate for the Court to decide whether Schooner's, Inc. had an insurable interest at the time of loss as a matter of law.   The parties presented the following pieces of evidence as determinative to whether Schooner's, Inc. still operated in 2015 with an insurable interest: the dissolution and then reinstatement of Schooner's, Inc. by the West Virginia Secretary of State; Tolliver's Examination Under Oath, which was later clarified and corrected with a sworn affidavit; the original and amended tax returns for Schooner's, Inc. from 2013 to 2015; and the lease agreements with Bar Boat LLC in 2013 and Sink or Swim LLC in 2014 and 2015.   Other evidence included

---

[3] In the briefs, both parties extensively discuss whether Plaintiff knew that Adam's Landing owned the Barge rather than Schooner's, Inc., pointing to the application, the survey conducted, and information gathered from the Broker and Agent.   *See Def.'s Resp.*, ECF No. 122 at 11-14; *Pl.'s Reply*, ECF No. 125, at 9.   The Court finds this discussion irrelevant as an insurable interest does not require ownership in the property, and the evidence is clear that Schooner's, Inc. never had an ownership interest in the Barge.   Moreover, as discussed elsewhere in this Opinion, Tolliver's affidavit, which clarifies Schooner's, Inc.'s interest, is not barred by the sham affidavit doctrine.   A jury will be tasked with judging Tolliver's credibility regarding Schooner's, Inc.'s continued operation, and Plaintiff can challenge any inconsistencies during cross examination if necessary.

the lack of bank accounts and employees, the late alterations to loss and profit sheets after the lawsuit was filed, and the general failure of corporate governance. The Court recognizes that Plaintiff challenges the admissibility and credibility of evidence produced by Schooner's, Inc. in opposition, and the Court, therefore, will discuss each of the contentions in turn.[4]

### i. Administrative Dissolution

First, the Court will turn to the effect of Schooner's, Inc.'s administrative dissolution in 2013. West Virginia gives power to the Secretary of State to administratively dissolve a corporation that fails to pay fines and dues owed to the state, that has an expired period of duration, that fails to notify the state of changes to its registered agent, or that is in default with the Bureau of Employment Programs. W. Va. Code § 31D-14-1420. Once a corporation is dissolved, the corporation can apply "for reinstatement within two years after the effective date of dissolution." W. Va. Code § 31D-14-1422.

Plaintiff highlights the dissolution of the corporation as evidence that Schooner's, Inc. was no longer operating after the 2012 season. *Pl.'s Mem. in Supp.*, ECF No. 102, at 8. During the Examination Under Oath, Plaintiff's counsel pointed to the West Virginia Secretary of State's website listing Schooner's, Inc. as being dissolved in November of 2013. *Exam. Under Oath*, ECF No. 100-3, at 52:1-6. The State's website now shows that Schooner's, Inc. submitted annual reports in 2011 and 2012 and then again in 2016 and 2017.[5] The State reinstated Schooner's, Inc.

---

[4] Plaintiff also argues that Schooner's, Inc. failed to dispute the material facts and certain legal arguments in its Response. *Pl.'s Reply*, ECF No. 125, at 4. The Court has thoroughly reviewed the various contentions in the briefings. The Court disagrees with Plaintiff's characterization that Schooner's, Inc. did not respond to the supposed bar from asserting a bailment. *See Pl.'s Reply*, ECF No. 125, at 5. Schooner's, Inc. argues about the admissibility of the affidavit and other evidence to support what it calls a bailment throughout its Response. The Court, thus, does not find that Schooner's, Inc. conceded the argument and will not award Plaintiff judgment as a matter of law on that reasoning.

[5] See *Business Organization Search*, W. Va. Sec. of State,

on February 1, 2016.   *Certificate of Reinstatement*, ECF No. 100-21.   The website no longer identifies a termination date for Schooner's, Inc., and, other than its break in annual reports, the website does not mention any break in operation of the corporation.

By reinstating the corporation, the State allows the corporate entity to relate back to the termination date.   The law specifies that once reinstatement is issued, "it relates back to and takes effect as of the effective date of the administrative dissolution."   W. Va. Code § 31D-14-1422(c). The reinstatement, thus, negates the dissolution as if it had never happened.   *See Nautilus Ins. Co. v. Headhunters Racetrack, LLC*, No. 5:13-CV-00426 (LJA), 2016 WL 1270237, at *2 (M.D. Ga. Mar. 31, 2016) (allowing corporation to act as if dissolution never occurred after reinstatement under similar Georgia law); *Allstate Ins. Co. v. Levesque*, No. 8:08-CV-2253-T-EAJ, 2010 WL 11478993, at *3 (M.D. Fla. Nov. 9, 2010) (finding that reinstatement relates back to dissolution date under similar Florida law).   Other district courts have interpreted similar laws and held that a corporation's reinstatement retroactively gives the corporation legal capacity when it was administratively dissolved.   *In re McKeever*, 550 B.R. 623, 638 (N.D. Ga. 2016).   Here, Schooner's, Inc.'s administrative dissolution has no effect on whether the corporation operated in 2015 because the reinstatement relates back to November of 2013.   This evidence, therefore, does not justify a judgment as a matter of law.

### ii.  Sham Affidavit

Second, the Court will consider whether Tolliver's subsequent affidavit is admissible or if it serves as a "sham affidavit" as Plaintiff characterizes it.   A sham affidavit is a subsequent affidavit offered to contradict previous deposition testimony.   "At the summary judgment stage,

---

http://apps.sos.wv.gov/business/corporations/   and   search   for   Jason   Tolliver   under Agent/Officer/Name.

if an affidavit is inconsistent with the affiant's prior deposition testimony, courts may disregard the affidavit …." *Kinser v. United Methodist Agency for the Retarded—Western North Carolina, Inc.*, 613 F. App'x 209, 210 (4th Cir. 2015). "A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." *Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 975 (4th Cir. 1990). To apply the sham-affidavit rule, the subsequent affidavit needs to present "a bona fide inconsistency" with a prior deposition. *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 n.7 (4th Cir. 2001); *see also Tipple Enter., LLC v. Kingsford Mfg. Co.*, Civ. No. 1:13CV146, 2014 WL 4925212, at *4 n.4 (N.D.W. Va. Sep. 30, 2014) (not applying sham-affidavit rule because defendant could not point to specific contradictions).

Circuits have applied different approaches to determine whether a subsequent affidavit is a sham, and the Fourth Circuit has not definitively weighed in on the issue besides requiring a clear inconsistency. The Third, Fifth, Seventh, and Ninth Circuits apply a more flexible approach, determining whether other independent evidence exists to support the subsequent affidavit. *See Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 254 (3d Cir. 2007) (citing relevant cases); *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 894 (5th Cir. 1980) ("In light of the jury's role in resolving issues of credibility, a district court should not reject the content of an affidavit even if it is at odds with statements made in an earlier deposition.").

Plaintiff alleges that Tolliver's affidavit, in which he clarifies that Schooner's, Inc. never owned the Barge but only served as its operating entity and that the relationship with Schooner's, Inc. and Adam's Landing was that of a bailment, cannot be regarded because it creates sham issues of fact. *Pl.'s Mem. in Supp.*, ECF No. 102, at 11. As Tolliver explained that Schooner's, Inc.

owned the Barge in the Examination Under Oath, Plaintiff challenges the subsequent affidavit as a direct contradiction to his previous sworn testimony.

Although owning the Barge and having a bailment to operate the Barge are inconsistent, the Court is not convinced that such inconsistency is so material as to disregard the subsequent affidavit as a sham. *See Boggs v. Cintas Corp. No. 2*, 2012 WL 1189915, at *4 (S.D.W. Va. Apr. 9, 2012) (declining to exclude affidavit when "discrepancies do not evince such a degree of contradiction as to warrant the disregard of the affidavit"). The explanation of Schooner's, Inc.'s interest in the affidavit coordinates with previous explanations during the insurance policy application process and when describing the purpose of the corporation during the Examination Under Oath. *See Commercial Ins. Application*, ECF No. 122-6; *Exam. Under Oath*, ECF No. 100-3, at 47:11-14 (Schooner's, Inc. was "[t]o operate the restaurant"). Plaintiff was aware that Schooner's, Inc. did not own the Barge at the time of the insurance policy, and the Court does not find affirming information of such fact to be prejudicial to Plaintiff. The affidavit presented here is made from personal knowledge; the affidavit includes specific assertions and clarifications that Adam's Landing bought the Barge and Schooner's, Inc. served as the operating entity; the affidavit corresponds with other independent evidence; and the affidavit clarifies inaccuracies from the Examination Under Oath.[6] The Court does not see these clarifications as direct contradictions as

---

[6] Although the Court recognizes that the purpose of an Examination Under Oath is similar to a sworn deposition, Plaintiff's counsel made it clear throughout the examination that it indeed was *not* a deposition. *See Exam. Under Oath*, ECF No. 100-3, at 6:14-15 ("it's a lot like a deposition, though it is not a deposition"); *id.* at 125:20-23 ("Okay. I realize it's not a deposition, and I'm not going to chide you for speaking objections, but at some point, this becomes your testimony."). In its Reply, however, Plaintiff argues that the examination "had all the hallmarks of a discovery deposition." *Pl.'s Reply*, ECF No. 125, at 11 n.11. Perhaps the facial hallmarks were present—the participation of counsel, the opportunity to correct inaccuracies at the end, etc.—but the spirit clearly was not. At the very least, these repeated assertions that the examination was not a deposition by Plaintiff curbed Defendants from exhibiting the same tenacity in objecting to Plaintiff's questioning and characterizations.

it is evident throughout the Examination that Tolliver confused many of his business entities and stopped answering questions when prodded for specific designations of each corporation.   *See Exam. Under Oath*, ECF No. 100-3, at 106:12-19.   Thus, the affidavit clarifies the correct designation of which business entity—all owned exclusively by Tolliver—conducted which actions.

Moreover, Plaintiff challenges the timing of the affidavit, pointing to the fact that it was created over two months after Plaintiff filed its Motion for Summary Judgment.   *Pl.'s Reply*, ECF No. 125, at 11.   However, Defendants provided Plaintiff advance notice before Plaintiff filed the summary judgment motion that an affidavit by Tolliver would be taken and that the affidavit would be consistent with the independent facts of the case, even if contradicting the Examination Under Oath.   *See Email Exchange*, ECF No. 122-29.   Ultimately, the Court finds that the subsequent affidavit does not prejudice Plaintiff, corresponds with independent facts of the case, and does not directly contradict a sworn deposition.   As the sham-affidavit rule is meant to "screen[] out sham issues of fact", the Court finds it appropriate to regard the subsequent affidavit in this case.   *See McDonald*, 914 F. Supp. at 1361.   Plaintiff can challenge Tolliver's inconsistencies at trial, and a jury shall be tasked with making any credibility determination.   The subsequent affidavit presents a genuine issue of material fact as to whether Schooner's, Inc. continued as an operating entity in 2015 at the time of the loss.

### iii.  Tax Returns

Third, Plaintiff challenges the use of Schooner's, Inc.'s amended tax returns as evidence of continued operation.   Plaintiff asserts that Schooner's, Inc. is legally estopped from using its amended tax returns because it contradicts sworn statements provided to the Internal Revenue Service (IRS) in the originals.   *Pl.'s Mem. in Supp.*, ECF No. 102, at 13.   In support, Plaintiff

cites cases that prevent a party from taking inconsistent positions, but none of these cases involve a lawful amendment that alters a previous position. *See PACE Indus. Union-Mgmt. Pension Fund v. Dannex Mfg. Co.*, 394 F. App'x 188, 199 (6th Cir. 2010) (preventing shareholder from arguing shareholder distribution when previously claimed as loan on tax returns); *Muncy v. Norfolk & W. Ry. Co.*, 676 F. Supp. 112, 114 (S.D.W. Va. 1987) (preventing plaintiff from claiming discrimination when previous suit claimed disability). These cases would be persuasive if they applied to the instant case, but they do not.

Federal tax law allows a corporation to file an amended return within three years after the date of the original return. *See IRS Form 1120X.* Schooner's, Inc.'s amended 2013 and 2014 returns all appear to fall within that three-year time period. *See Am. 2013 & 2014 Tax Return*, ECF No. 122-9. Even if the Court found the timing of such amendment to be suspicious, the Court has no reason to disregard a lawfully amended document. Unlike the situations involved in Plaintiff's cited cases, Schooner's, Inc. amended the tax returns within the allowed time period, and there is no indication that the IRS refused these amended returns. Therefore, the Court will not disregard the amended tax returns as evidence that Schooner's, Inc. still operated as a business through 2015. Any issues of credibility on these amendments, including the timing of these amendments, are proper for jury determination.

### iv.  Lease Agreements

Fourth, the Court considers the three commercial leases that list Tolliver as the landlord of the restaurant in his individual capacity. The Court agrees that these leases could undermine Schooner's, Inc.'s claims that it remained the operating entity after 2012. However, the evidence suggests that Tolliver failed to follow corporate formalities, and this failure, in itself, may not terminate the interest of Schooner's, Inc. in the operation of the restaurant as a matter of law. The

Court recognizes that Tolliver did not have any apparent authority to lease the restaurant or the Barge in his individual capacity because Adam's Landing owned the Barge and Schooner's, Inc. operated the restaurant and owned the equipment.   So even if the leases were signed by Tolliver in his individual capacity, and not as a corporate owner, that does not automatically eliminate Schooner's, Inc.'s interest in the restaurant.   Schooner's, Inc. operated the restaurant, and Adam's Landing owned the Barge; Tolliver had no individual capacity at all.   The leases, therefore, may not have deprived Schooner's, Inc. of its interests in the restaurant and equipment even if Tolliver attempted to circumvent the corporation and lease it out himself.   Schooner's, Inc. could have interrupted this lease agreement, challenged its authority, and forced its own operations to the exclusion of the other businesses.   The Court finds this perhaps an unlikely scenario, but not an impossible one.   The existence of this evidence presents enough contradicting information to create a question of fact for the jury.   Furthermore, even if Plaintiff is correct in that parol evidence will bar the admission of the affidavits by Matt Casto and Paul Runnels, who explain that the parties understood that Schooner's, Inc. was the leasing entity rather than Tolliver, that decision would not change the result here.   The Court will rule on the admissibility of the affidavits or testimony closer to trial.

### v.  Ownership of Contents

Finally, the Court considers Plaintiff's challenge to Schooner's, Inc.'s reliance on the ownership of the equipment within the Barge when it sank.   *See Pl.'s Reply*, ECF No. 125, at 18. Schooner's, Inc. provided evidence that the company purchased the kitchen equipment aboard the Barge, and that equipment was leased out to Bar Boat LLC and Sink or Swim LLC.   Plaintiff challenges these arguments under a case decided by the Supreme Court of Appeals of West Virginia in 1904.   The Court in *Tyree v. Virginia Fire & Marine Insurance Company* held that a

husband could not have an insurable interest in a house that was erected on his wife's real estate because the husband did not have title over the real property.   46 S.E. 706 (W. Va. 1904). Plaintiff cites this case for the conclusion that the husband's likely ownership of the contents in the house could not confer an insurable interest over the house as a whole.   *Pl.'s Reply*, ECF No. 125, at 18.   Accordingly, Plaintiff argues, Schooner's, Inc. cannot have an insurable interest in the Barge through its ownership of the contents contained therein.

The Court disagrees with Plaintiff's analysis for a number of reasons.   First, the *Tyree* case is distinguishable in that the insurance policy in that case voided the company's liability if the husband did not have "title or interest … [amounting to] the entire, absolute, unconditional, unencumbered fee-simple ownership."   46 S.E. at 706.   Such clause is not present here, and Plaintiff knew in the application process that Schooner's, Inc. was not the owner of the Barge. Second, the husband in *Tyree* represented to the agent that he owned the property for which he sought insurance.   *Id.* at 707-08.   Here, Schooner's, Inc. disclosed its interest in the Barge truthfully to Plaintiff, and such concerns of misrepresentation are not present as in *Tyree*.

More importantly, *Tyree* has been distinguished in subsequent cases when the insured party has possession of the property and can demonstrate a pecuniary loss, or an equitable right by gift or contract, to create an insurable interest.   *See Hawkins v. Sw. Mut. Fire Ins. Co.*, 93 S.E.2d 873, 874 (W. Va. 1917) (citing cases finding insurable interest).   In *Hawkins*, the court found an insurable interest when the wife paid for the erection of a house on her husband's property and had the sole possession and control over it.   *Id.*   Here, Schooner's, Inc. has presented evidence of ownership of the contents, original operation of the restaurant, and leases which contain the continued use of the equipment installed on the Barge.   Plaintiff was aware at all times that Schooner's, Inc. did not own the Barge and was never misled to believe Schooner's, Inc. actually

-14-

had ownership until the confusion with the Examination Under Oath.   Thus, *Hawkins* distinguishes *Tyree* and at least lends support for Schooner's, Inc.'s insurable interest in the Barge through the continued ownership and leasing of the equipment.

In ruling that Schooner's, Inc.'s evidence supports its claim as to its continued operation of the restaurant, the Court is not convinced that such evidence leads to the automatic conclusion that Schooner's, Inc. did have an insurable interest at the time of loss.   Summary judgment is appropriate only when there are no genuine issues of material fact remaining.   In this case, many of the documents one would expect with corporate transactions are missing or were never created. Thus, much weight will be placed on Tolliver's testimony, if he testifies at trial.   A jury is required to weigh the evidence, including Tolliver's credibility, on the operation of Schooner's, Inc., the relationship with Adam's Landing, and how the lease transactions were handled.   The evidence before the Court today would require the Court to inappropriately weigh the credibility of a potential witness and balance the parties' evidence against each other to resolve a question of fact.

Accordingly, looking at all of the evidence presented, the Court finds that there is at least a question of fact for the jury to determine whether Schooner's, Inc. had an insurable interest at the time of loss.   Plaintiff's arguments supporting its position have all been challenged with competing evidence presented by Defendants.   However, Defendants' evidence has not definitively shown an insurable interest because Plaintiff challenges the evidence's weight and credibility.   Clearly, there are genuine issues of material facts as the evidence is disputed, and summary judgment would be inappropriate.   *But see Shaffer v. Calvert Fire Ins. Co.*, 62 S.E.2d 699, 703-04 (W. Va. 1950) (finding undisputed evidence on insurable interest a question of law not available to a jury).   Therefore, the Court **DENIES** Plaintiff's Motion for Summary Judgment

on Count I (ECF No. 100) and **DENIES** Defendant's Cross-Motion for Summary Judgment on Count I (ECF No. 122).

### b. Insureds Under the Policy

Plaintiff's Motion for Summary Judgment also asks the Court to rule that Tolliver and Adam's Landing are not insureds under the policy. *See Pl.'s Mem. in Supp.*, ECF No. 102, at 17-18. The insurance policy specifies that the named insured is Schooner's, Inc. and makes no mention of Adam's Landing or Tolliver. *See Ins. Policy*, ECF No. 122-7. Finding Adam's Landing or Tolliver as an equitable insured under the policy would ignore the unambiguous declaration that the insurance policy was between Plaintiff and Schooner's, Inc. alone. *See Farmers & Mechs. Mut. Ins. Co. v. Allen*, 778 S.E.2d 718, 725 (W. Va. 2015) (finding that the circuit court erred in reading another insured into policy when not named). "[A]n insurance policy is a contract between the insurer and the insured *named in the policy*." *Id.*

Schooner's, Inc. did not address these arguments in its Response. "Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to 'a judgment as a matter of law.'" *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993). Thus, a district court still has the duty to review the motion, or the argument contained therein, and determine if it justifies judgment as a matter of law. In this case, the insurance policy only names Schooner's, Inc. as the named insured and does not leave open the possibility of equitable insureds. Finding the language unambiguous, the Court finds that only Schooner's, Inc. can collect on the insurance policy if afforded coverage. Thus, the Court **GRANTS** Plaintiff's Summary Judgment Motion and finds that Adam's Landing and Tolliver cannot collect on the insurance policy as a matter of law.

### c. Counterclaim

Plaintiff's Motion for Summary Judgment also challenges Defendants' bad faith counterclaim for lack of evidence.   Plaintiff argues that Defendants caused much of the delay at no fault by Plaintiff.   *Pl.'s Mem. in Supp.*, ECF No. 102, at 18-19.   Defendant argues that the record contains sufficient evidence to show bad faith.   *Def.'s Resp.*, ECF No. 122, at 29. Schooner's, Inc.'s counsel, moreover, submitted an affidavit requesting more discovery for the bad faith claims, particularly for a Rule 30(b)(6) deposition of Plaintiff's corporate representative. *Rule 56(d) Aff. of L. David Duffield*, ECF No. 122-34.

Overall, the evidence presented to the Court contains little information to support summary judgment in favor of Plaintiff for the bad faith counterclaim.   Plaintiff's reasoning seems to stem from the understanding that Count 1 would be granted in its favor as a matter of law.   *See Pl.'s Mem. in Supp.*, ECF No. 102, at 18 ("As it is, because there is no coverage for the Loss as a matter of law, the Counterclaim Plaintiffs cannot 'substantially prevail' …..").   The Court agrees with Defendants that more discovery may be necessary.   In the Court's Order on January 18, 2017, discovery was extended for production and review of photographs, videos, and related documents that were not previously disclosed to Defendants.   *See Court Order*, ECF No. 118, at 3.   The Court finds it possible that some of these documents will assist in Defendants' bad faith counterclaim.   Accordingly, ruling on the bad faith counterclaim as a matter of law is premature, and Plaintiff's Motion for Summary Judgment on the issue must be **DENIED**.   A dispositive motion on this issue can be raised by the June 6, 2017 deadline stated in the Order.

### IV.    Conclusion

Accordingly, the parties have presented contradictory facts that make summary judgment on Count 1 and the Counterclaim inappropriate.   A jury will determine whether Defendant

Schooner's Bar & Grill, Inc. had an insurable interest at the time of loss.   However, as Defendant Huntington Harbor Marina, LLC and Defendant Jason Tolliver are not listed as insureds in the policy, the Court **GRANTS** Plaintiff's Motion for Summary Judgment against those parties for Count One.   Defendants Huntington Harbor Marina, LLC and Jason Tolliver, in his individual capacity, are not entitled to collect under the insurance policy.   Therefore, the Court **GRANTS in part and DENIES in part** Plaintiff's Motion for Summary Judgment (ECF No. 100) and **DENIES** Defendant's Cross-Motion for Partial Summary Judgment (ECF No. 122).

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        February 28, 2017

ROBERT C. CHAMBERS, CHIEF JUDGE